UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FELICIA PULLOM,

                            Plaintiff,                      Civil No. 05-1236-HA

       v.                                         OPINION AND ORDER

UNITED STATES BAKERY, an Oregon
corporation, qualified to do business in
Oregon, dba Franz Family Bakeries,

                            Defendant.

_____

HAGGERTY, Chief Judge:

       Plaintiff Felicia Pullom (plaintiff) filed this action against her former employer, United

States Bakery (defendant).  Plaintiff asserts claims for unlawful race and sex discrimination

under 42 U.S.C. § 2000e ( Title VII) and and O.R.S. 659A.030, retaliation under Title VII and

O.R.S. 659A.030, and wrongful discharge.  This court has jurisdiction over the federal claims

pursuant to 28 U.S.C. § 1331 and over the state claims pursuant to 28 U.S.C. § 1367.  Defendant

has moved for summary judgment on all claims.  The parties have also moved to strike portions

of each other's supporting documents and/or summary judgment briefing.  The court heard oral

argument on February 16, 2007.  For the following reasons, defendant's Motion for Summary

OPINION AND ORDER- 1

Judgment [32] is granted in part and denied in part, defendant's Motion to Strike [61] is denied as moot, and plaintiff's Motion to Strike [66] is denied.

## BACKGROUND

Plaintiff, an African-American female, was hired by defendant to work at Pierre's French Bakery in October 1998.  In February 2003, defendant reassigned plaintiff to its Franz Bakery location.  Plaintiff was laid off in December 2003.  Plaintiff acknowledged in her deposition that she had experienced several non-discriminatory layoffs previously, and that layoff and recall rights are governed by the collective bargaining agreement (CBA) with her union.

Under the CBA, "if an employee is more senior, he/she may not get recalled or bump another less senior employee if the other employee has more skill and ability to perform the position."  Pl.'s Resp. to Def.'s Concise Statement, ¶ 3.  The CBA requires defendant to train a more senior employee for up to five days before disqualifying him or her from a position in favor of a less senior employee.

Plaintiff contends that at the time she was laid off, less senior male and Caucasian employees continued working and were not laid off.  It is undisputed that plaintiff was disqualified from taking the position of a less senior employee.  Defendant contends that plaintiff was not qualified to perform the position after training.  Plaintiff contends that defendant's Caucasian foreman, Chris Lowry, did not train her to take the position and told her that he did not want plaintiff to work in his section.

Plaintiff waived her right to train in a different department, allegedly due to concerns about that department's supervisor and his alleged history of tolerating discrimination.

OPINION AND ORDER- 2

Plaintiff was recalled to work at the Franz Bakery plant in April 2004.  Plaintiff claims that she was not scheduled to work, although men with less seniority than her were.  When plaintiff asked about the schedule, the plant manager allegedly laid plaintiff off again, effective April 19, 2004.

Plaintiff returned to work at Franz Bakery in May 2004, and worked with foreman Scott Jobe (Jobe).  Plaintiff claims that Jobe made offensive, harassing comments to plaintiff and repeatedly compared her to his wife, who is also African-American, in a demeaning manner.  Jobe admits that he told plaintiff that she reminds him of his wife.

On June 26, 2004, Jobe allegedly eavesdropped on plaintiff's conversation with a female co-worker, then examined plaintiff in a lewd manner.  Plaintiff further alleges that Jobe "stalked" her at work and told other male employees not to speak to her.

Jobe also allegedly treated plaintiff differently from other employees by refusing to help with her work, adding to her work, and reprimanding her for conduct for which he did not reprimand other employees.  For example, on June 19, 2004, Jobe allegedly reprimanded plaintiff for putting her keys in a drawer at her work station, although other employees were not reprimanded for doing the same.  On July 1, 2004, Jobe allegedly reprimanded plaintiff, but not other employees, for failing to wear earplugs.  Plaintiff allegedly complained of this harassment to a supervisor and another foreman.

On July 1, 2004, Jobe made a written report to his supervisor that plaintiff was insubordinate, refused to follow company policies regarding earplugs and bringing personal items onto the production floor, and had used profanity in response to his directives.  Prior to

OPINION AND ORDER- 3

then, Jobe admittedly had never written a daily report or had any issues with plaintiff regarding her conduct, nor told any employee not to bring personal items onto the floor.

On July 2, 2004, plaintiff's day off, she called defendant's human resources manager, Diana Rak (Rak). In that conservation, plaintiff allegedly reported harassment by Jobe. Rak allegedly told plaintiff that she was leaving the office and did not have time to speak with plaintiff, but that she would return at around 2:30 p.m. Plaintiff allegedly called Rak at 2:25 p.m., and left her a message that she had to attend to a medical problem with her daughter that afternoon but would come to see Rak on July 6, 2004.

At 2:50 p.m., Rak called plaintiff and suspended her for failing to attend a meeting at 2:30 p.m. Plaintiff contends that Rak had not told her to attend a meeting, nor had plaintiff requested a meeting. Although Rak testified that she was unaware that plaintiff was making a report of sexual harassment when she suspended plaintiff, defendant admitted in its briefing that plaintiff had asked Rak how to file a harassment report. Mem. in Supp. of Def.'s Mot. for Full or Partial Summ. J. at 5.

On July 6, 2004, plaintiff met with Rak, and plaintiff reported that Jobe had been sexually harassing her. Plaintiff claims that Rak was unreceptive to her report of harassment and chastised plaintiff for not following defendant's policies and guidelines. On July 8, 2004, plaintiff gave Rak a written report complaining of continued harassment and claiming that her July 2 suspension was retaliatory.

On July 12, 2004, Rak set up another meeting to address plaintiff's complaints. Rak allegedly told plaintiff that she lacked time to investigate her harassment allegations. Rak

OPINION AND ORDER- 4

discussed defendant's harassment and discrimination policies with plaintiff, and then issued

plaintiff five corrective actions, including a final written warning, for violations cited by Jobe.

Specifically, plaintiff was written up for using abusive and threatening language,

bringing personal items onto the production floor, refusing to follow supervisory instructions,

refusing to wear earplugs, and refusing to stay to help finish a task.  One corrective action

allegedly reprimanded plaintiff for a violation on a day that plaintiff had not been working.

Plaintiff  complained to Rak that the corrective actions "were not based on the facts."  Pl.'s Resp.

to Def.'s Concise Statement of Facts, ¶ 26.

On July 19, 2004, plaintiff allegedly complained to Rak that the five corrective actions

were retaliation for reporting harassment.

On September 25 and 26, 2004, plaintiff allegedly called in sick due to an illness.  On

September 28, 2004, plaintiff saw her physician and obtained a written release for the absences.

Rak rejected plaintiff's doctor's note and marked plaintiff's absence as unexcused.  On October 1,

2004, plaintiff obtained another doctor's note, which Rak also refused to accept.

On that same day, the production manager, operations manager, and Rak allegedly told

plaintiff that they would not sustain her allegations about Jobe.  Jobe received a copy of

defendant's diversity policies in October 2004.  There is no evidence of any prior reprimand of

Jobe about his conduct.  In November 2004, Rak called a "get to know you meeting" with

plaintiff, Jobe, Zimmerman, and two other co-workers.  Plaintiff claims that there was no

discussion of harassment or diversity at this meeting.

On November 20, 2004, plaintiff received a call at 5:00 a.m. that she was scheduled to

work at 4:45 a.m.  Plaintiff claims that she had not been scheduled to work that day according to

OPINION AND ORDER- 5

the schedule posted on November 18, 2004.  Plaintiff received a corrective action for arriving

late to work on November 20.

Plaintiff was terminated on November 26, 2004, based on "excessive attendance

violations."  Plaintiff filed a grievance regarding the termination and underlying corrective

actions as retaliatory and requested a hearing before the Board of Adjustment.  The Board upheld

the corrective actions and plaintiff's termination.

On July 13, 2005, plaintiff filed a charge of unlawful employment discrimination and

retaliation with the Oregon Bureau of Labor and Industries (BOLI), and BOLI co-filed a charge

with the Equal Employment Opportunity Commission (EEOC).  Plaintiff received right-to-sue

letters from BOLI and the EEOC in May 2005.  Plaintiff filed this action subsequently.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits, if any, show there is

no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); *see Bhan v. NME Hosps., Inc.*,

929 F.2d 1404, 1409 (9th Cir. 1991).  The moving party carries the initial burden of proof and

meets this burden by identifying portions of the record on file that demonstrate the absence of

any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once

the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through

the production of probative evidence that there remains an issue of fact to be tried.  *Id.*

The court must view the evidence in the light most favorable to the non-moving party.

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted).

All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the

OPINION AND ORDER- 6

moving party. *MetroPCS, Inc. v. City and Co. of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

However, the Ninth Circuit has reasoned that courts should require very little evidence from a plaintiff to survive summary judgment in an employment discrimination case because the ultimate question is one that is most appropriately conducted by the fact-finder, upon a full record. *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000); *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

## A.    DISCRIMINATION (Claims 1 and 3)

Plaintiff alleges that defendant unlawfully discriminated against her by laying her off or failing to timely recall her, singling her out for corrective action, and ultimately terminating her based on her race and gender, in violation of Title VII (Claim 1) and O.R.S. 659A.030 (Claim 3).

Defendant moves for summary judgment on grounds that plaintiff has failed to: (1) make out a prima facie case of discrimination because she failed to establish that (a) she was

OPINION AND ORDER- 7

performing satisfactorily (or in the layoff context, that she was qualified to perform jobs retained by less senior employees), or (b) others not in the protected class were treated more favorably; or (2) refute defendant's legitimate business reasons for its challenged conduct with evidence of pretext.

Title VII makes it unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Because O.R.S. 659A.030 is modeled after Title VII, plaintiff's state law discrimination claim can be analyzed together with her federal discrimination claim. *See Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 n.2 (9th Cir. 1993); *Winnett v. City of Portland*, 847 P.2d 902, 905 (Or. App. 1993).

To prevail in a disparate treatment claim, a plaintiff must show "the employer's intent to discriminate, but intent may be inferred from circumstantial evidence." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (quotations and citations omitted) (a person suffers disparate treatment in employment "when he or she is singled out and treated less favorably than others similarly situated on account of race").

To establish a prima facie case of discrimination under *McDonnell Douglas*, a plaintiff must offer proof that: (1) he or she belongs to a class of persons protected by Title VII; (2) he or she performed her job satisfactorily; (3) he or she suffered an adverse employment action; and (4) his or her employer treated her differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. *Chuang*, 225 F.3d at 1123 (citing *McDonnell Douglas*, 411 U.S. at 802). If the plaintiff establishes such a prima facie case, the court presumes that the plaintiff's employer undertook the challenged employment action because of

OPINION AND ORDER- 8

the protected characteristic.  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802).

To rebut this presumption, the defendant-employer must produce admissible evidence showing that it undertook the challenged employment action for a legitimate, nondiscriminatory reason.  *Cornwell*, 439 F.3d at 1028 (citing *McDonnell Douglas*, 411 U.S. at 802).  If the defendant does so, then "the presumption of discrimination drops out of the picture, and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required in civil cases under Fed. R. Civ. P. 56(c)."  *Cornwell*, 439 F.3d at 1028 (quotations omitted) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

Under this standard, summary judgment is inappropriate if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's protected class.  *Cornwell*, 439 F.3d at 1028 (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).  A plaintiff can overcome a summary judgment motion by providing evidence that either: (1) "a discriminatory reason more likely motivated the employer to make the challenged decision," or (2) "the employer's proffered explanation is unworthy of credence" or "is actually a pretext for discrimination."  *Cornwell*, 439 F.3d at 1028 (quotations, citations, and footnote omitted).

The plaintiff may establish a triable issue regarding the employer's discriminatory intent through direct evidence, such as an employer's use of racial epithets, or by presenting circumstantial evidence.  *Id.* at 1029.  In the past, the Ninth Circuit has held that circumstantial evidence of pretext must be both "substantial" and "specific" to defeat summary judgment.  *See, e.g., Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) ("Such [circumstantial]

OPINION AND ORDER- 9

evidence of pretext must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of sex").

However, the Ninth Circuit recently cast doubt on *Godwin* and its progeny in its analysis of a recent Supreme Court decision that suggested courts must treat circumstantial and direct evidence alike. *See Cornwell*, 439 F.3d at 1029-30 (citing *Desert Palace v. Costa*, 539 U.S. 90, 92 (2003). Although the Ninth Circuit has not overturned its precedent requiring "substantial" and "specific" circumstantial evidence, the court noted in *Cornwell* that "Title VII does not require a disparate treatment plaintiff relying on circumstantial evidence to produce more, or better, evidence than a plaintiff who relies on direct evidence." 439 F.3d at 1030.

### 1.    Layoffs and Recalls

Plaintiff asserts that defendant discriminated against her unlawfully by laying her off in December 2003 and April 2004, and also inadequately trained her. As explained below, the court finds that plaintiff cannot establish a prima facie case of race and gender discrimination with respect to defendant's layoff practices. With respect to the training plaintiff received, defendant has come forward with legitimate, nondiscriminatory reasons for its challenged action, and plaintiff has failed to respond with sufficient evidence to create a triable issue of fact with respect to her ultimate burden of persuasion.

First, plaintiff contends that she suffered disparate treatment during both layoff periods because Caucasian male employees with less seniority than her were not laid off or were returned to work before her. The court concludes that plaintiff has failed to present the minimal degree of evidence needed to establish a prima facie case of discrimination. *See Wallis*, 26 F.3d at 889 ("The requisite degree of proof necessary to establish a prima facie case for Title VII . . .

OPINION AND ORDER- 10

on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence").  It is undisputed that plaintiff is a member of a protected class based on her race and gender.  *See Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002) ("being laid off from one's position certainly constitutes an adverse employment action").

However, plaintiff has failed to present evidence that she performed satisfactorily prior to being laid off.  Plaintiff makes no argument in her briefing concerning her performance leading up to the layoffs.  Moreover, the record indicates that in the two years prior to being laid off, plaintiff received counseling and two written notices for attendance-related problems, one written notice for failing to timely report an occupational injury, and a final written notice for failing to follow a supervisor's instructions.  *Cf. id.* at 659-60 (finding absence of any formal write-ups or disciplinary notices, coupled with plaintiff's own statement of satisfactory performance sufficient to establish second element of prima facie case).  In light of the number of write-ups and disciplinary notices plaintiff had received, the court cannot conclude that plaintiff was meeting defendant's legitimate expectations with respect to job performance.

Plaintiff has also failed to present evidence that defendant treated similarly situated Caucasian and/or male employees more favorably.  Plaintiff cites no such evidence in her summary judgment briefing.  At her deposition, plaintiff identified only one male co-worker with less seniority who allegedly returned to work before she did, but did not testify that she was similarly qualified to perform the position that the male co-worker was given.

Moreover, plaintiff testified that every other African-American female she knew was working during the times she was laid off.  Given plaintiff's admission, no reasonable juror could conclude that defendant has a general practice of treating African-American and/or female

OPINION AND ORDER- 11

employees less favorably in layoffs than Caucasian and/or male employees. *Cf. id.* at 660 (finding sufficient evidence of racial discrimination when white plaintiff asserted that only white or white-looking employees were laid off, while non-white employees were not).

Plaintiff also argues that she was inadequately trained, and consequently was disqualified from taking a different position to avoid layoff, based on her race and/or gender. Prior to being laid off in December 2003, plaintiff trained for a position in the mainline wrap department, but was denied the position after defendant determined she was not qualified. She alleges that the foreman of that department told her that he did not want her in his section and left her without any training for three days. As discussed above, the CBA entitles a more senior employee to up to five days of training before being disqualified for a position in favor of a less senior employee. The record indicates that plaintiff complained about the amount of training she received at the time she was disqualified from the position. Construing the facts in a light most favorable to plaintiff, a reasonable juror could conclude that plaintiff was denied training to which she was entitled, and that such treatment constituted an adverse employment action.

Plaintiff has also presented evidence that male employees receive more favorable treatment with respect to training opportunities. Another employee, Jackie Webb (Webb), declared that she has seen less senior male employees receive training when more senior females were laid off. Accordingly, plaintiff has established a prima facie case of gender discrimination with respect to her disqualification from the mainline wrap position.

However, defendant has offered legitimate, nondiscriminatory reasons for plaintiff's disqualification from the mainline wrap position. Specifically, defendant asserts that plaintiff was disqualified from the position based on her lack of skills and ability. Plaintiff's post-training

OPINION AND ORDER- 12

evaluation gave plaintiff the lowest score possible on "task performance" and "task ability" and concluded that plaintiff had "too much to learn in a short period of time." Decl. of Diana Rak, Ex. 4 at 2.   The evaluation criticized plaintiff's communication skills and knowledge of standard operating procedures specifically and reported problems with "paper-changes" and a "basket jam-up." *Id.*   Plaintiff's poor performance during training constituted a legitimate, nondiscriminatory reason for disqualifying her from the mainline wrap position. *See Aragon*, 292 F.3d at 661 (concluding that plaintiff's poor job performance constituted a legitimate nondiscriminatory reason for his being laid off).

Accordingly, plaintiff was required to put forth evidence establishing that a discriminatory reason more likely motivated defendant to disqualify her, or that defendant's proffered explanation is unworthy of credence or is pretextual.   It is not enough for plaintiff to simply deny defendant's assertion that she was not qualified for the mainline wrap position. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact").

This plaintiff has failed to do.   Plaintiff has presented no direct evidence of discriminatory intent.   For example, there is no evidence that defendant or its foreman who evaluated plaintiff used racial or sexual epithets, or that the skills and abilities that were found lacking in plaintiff were based on racial or gender stereotyping.

Webb's declaration that over the course of twenty years of employment with defendant she has seen defendant train less senior male employees when it laid off more senior female employees, also fails to establish discriminatory intent with regard to plaintiff's disqualification. Webb failed to specify whether she has observed such conduct recently, much less whether she observed it at the time plaintiff was laid off.   No reasonable juror would conclude from Webb's

OPINION AND ORDER- 13

vague statement alone that defendant's explanation for disqualifying plaintiff from the mainline wrap position was a pretext for unlawful discrimination.

Similarly, the fact that plaintiff was compensated for a scheduling error at the time she was laid off does not defeat defendant's summary judgment motion. Even if a reasonable juror might conclude that the scheduling error caused plaintiff's April 2004 layoff, there is no evidence that the scheduling error was deliberate or motivated by an intent to discriminate. As discussed above, plaintiff has neither alleged nor presented any evidence that her performance prior to being laid off was satisfactory, nor has she presented evidence that similarly situated Caucasian and/or male employees were not laid off in April 2004. Plaintiff's unsubstantiated personal belief that "there was no mistake and that the 'bumping' was discriminatory,'" Pl.'s Resp. at 5, fails to create a triable issue. *See Wallis*, 26 F.3d at 890 (holding that a plaintiff may not defeat summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action).

In sum, plaintiff has failed to establish a prima facie case of discrimination with respect to defendant's layoff practices. To the extent she has established a prima facie case of discrimination with respect to defendant's training practices, she has failed to present evidence that defendant's explanation for disqualifying her from the mainline wrap position was a pretext for unlawful discrimination.

### 2.     Corrective Actions and Termination

Plaintiff also argues that defendant discriminated against her unlawfully by singling her out for corrective action based on her race and/or gender. Plaintiff was issued five corrective actions based on Jobe's report that plaintiff used abusive and threatening language, brought personal items onto the production floor, refused to follow supervisory instructions, refused to

OPINION AND ORDER- 14

wear earplugs, and refused to stay to help finish a task. Although plaintiff's claims are drafted poorly, she appears to challenge Jobe's report as being race- and/or gender-based. Plaintiff denies that she used abusive and threatening language or refused to follow instructions or stay to help finish a task. Plaintiff admits that she brought personal items onto the floor and refused to wear earplugs, but asserts that other employees engaged in the same conduct and were not written up.

The court concludes that plaintiff cannot establish a prima facie case of disparate treatment by Jobe based on his report regarding plaintiff's conduct. The court is not convinced that Jobe's report constituted an adverse employment action. The report was not itself a corrective action, but rather triggered an investigation that may or may not have led to plaintiff being reprimanded.

Even if plaintiff could establish a prima facie case, defendant has offered legitimate, nondiscriminatory reasons for issuing plaintiff the corrective actions and for terminating her. Defendant's policies and guidelines prohibit explicitly all the conduct for which plaintiff was disciplined. Defendant has offered evidence that other employees who engaged in similar behavior received the same treatment, including evidence that: (1) Jobe was issued a corrective action for failing to ensure that employees who worked his shift wore hearing protection and kept personal items off the production floor; (2) Webb and Robinson were issued corrective actions for not wearing hearing protection; and (3) Robinson was issued a correction for bringing personal items onto the production floor. Additionally, defendant's report of attendance violations demonstrates that employees who had received comparable corrective actions were terminated.

OPINION AND ORDER- 15

Plaintiff has failed to present evidence that defendant's proffered explanation for the corrective actions and termination was a pretext for unlawful discrimination. Plaintiff has failed to identify any Caucasian and/or male employees who engaged in similar behavior and were not issued corrective actions. *See Vasquez v. Co. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004) ("individuals are similarly situated when they have similar jobs and display similar conduct"). Plaintiff's repeated references to circumstantial evidence that the corrective actions were issued in retaliation for plaintiff's complaint of sexual harassment, fail to create a triable issue as to plaintiff's disparate treatment claim.

### 3.    Hostile Work Environment

The court acknowledges the parties' arguments concerning whether Jobe's alleged conduct constituted actionable sexual harassment. However, plaintiff's Complaint failed to allege either that Jobe's conduct amounted to sexual or racial harassment that was ratified by defendant, or that defendant's practices created a hostile work environment. Accordingly, no claim for sexual harassment or hostile environment is before the court, and the court need not address the parties' arguments here.

### B.    RETALIATION (Claims 2 and 4)

Plaintiff asserts that defendant retaliated against her in violation of Title VII and O.R.S. 659A.030. Specifically, plaintiff argues that defendant suspended her, imposed five corrective actions, refused to excuse two medical absences, changed her work schedule without her knowledge, and terminated her, all in retaliation for her complaints of sexual harassment by Jobe and her complaints about Rak's response to plaintiff's allegations. Defendant moves for summary on grounds that (1) plaintiff has failed to establish a causal connection between her reports of harassment and her termination, and (2) plaintiff has failed to refute defendant's

OPINION AND ORDER- 16

legitimate business reasons for its allegedly retaliatory conduct.  For the following reasons, defendant's summary judgment motion is denied as it pertains to plaintiff's federal and state retaliation claims.

Title VII makes it unlawful for an employer to discriminate against any employee because the employee has opposed an unlawful employment practice, or because the employee has made a "charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3.

To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that: (1) he or she was engaging in a protected activity (*i.e.*, made a protected disclosure), (2) he or she suffered an adverse employment decision, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment decision suffered. *McGinest*, 360 F.3d at 1124 (citations omitted).

To establish a causal connection, the plaintiff must show that the protected activity was the "likely reason" for the adverse employment action.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064-65 (9th Cir. 2002); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).  "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.'"  *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988) (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)).  A retaliatory motive may be inferred when a discharge occurs "fairly soon after the employee's protected expression."  *Villiarimo*, 281 F.3d at 1065 (quoting *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009-10 (7th Cir. 2000)).

OPINION AND ORDER- 17

Once the plaintiff makes out a prima facie case of retaliation, the burden then shifts to the defendant to articulate some legitimate, non-retaliatory reason for the adverse action. *Villiarimo*, 281 F.3d at 1062. If the defendant does so, then the plaintiff may defeat the defendant's summary judgment motion by establishing that the defendant's proffered reasons are pretextual, either directly by persuading the court that a discriminatory motive more likely provoked the employer's action, or indirectly by showing that the employer's explanation is not credible. *See Chuang*, 225 F.3d at 1127.

Defendant concedes that plaintiff has established the first two elements of her prima facie case, but contends that she has failed to establish the causation element. In particular, defendant argues that plaintiff cannot, as a matter of law, establish a causal connection because she was terminated "more than four months after she complained to Rak on July 6, 2004 about Jobe." This court disagrees.

The Ninth Circuit has found a proximity of two months between the protected activity and adverse employment action sufficient to infer a causal connection. *See Miller v. Fairchild Indus.*, 797 F.2d 727, 731 (9th Cir. 1986). In light of the four-month proximity between plaintiff's complaint and termination, and the proximity (less than four months) with the individual corrective actions such as plaintiff's suspension, the five corrective actions she received, and Rak's refusal to accept her doctor's note, this court finds adequate evidence of a causal connection between them. Because plaintiff has made out a prima facie case of retaliation, the burden shifts to defendant to proffer a legitimate explanation for its actions.

**1.    Suspension**

OPINION AND ORDER- 18

Defendant has failed to establish a legitimate basis for plaintiff's suspension on July 2, 2004, the day she reported harassment. Defendant cites no policy that proscribes suspension for an employee who fails to attend a meeting.

Moreover, even if defendant's policies supported the suspension, plaintiff has presented adequate evidence of pretext to avoid summary judgment. She declared that Rak never told her that she had scheduled a meeting. Plaintiff also pointed to inconsistencies in Rak's testimony regarding who set up the meeting and whether Rak knew on the day she suspended plaintiff that plaintiff was making a report of sexual harassment. Construing the facts in a light favorable to plaintiff, a reasonable juror could conclude that Rak suspended plaintiff because plaintiff reported harassment.

### 2.    Five Corrective Actions Issued on July 12, 2004

As discussed above, defendant has met its burden with respect to the corrective actions plaintiff received for failing to wear hearing protection and for bringing personal items onto the production floor. Such conduct violated defendant's policies and guidelines, and plaintiff concedes she had notice of these and admits violating them.

However, plaintiff argues that enforcement of the policies was pretextual and that defendant issued the corrective actions "to make [plaintiff] shrink away from bringing any more complaints." Pl.'s Resp. at 13. Plaintiff points to the facts that (1) the writeups underlying the actions came from the person plaintiff had accused of harassment, (2) Jobe had never submitted a written report before, (3) Rak waited until twelve days after Jobe allegedly wrote plaintiff up to issue the corrective actions, and (4) Rak issued the corrective actions at a meeting to address plaintiff's second complaint of harassment. Construing these facts in a light favorable to

OPINION AND ORDER- 19

plaintiff, a reasonable juror could find that Rak issued the corrective actions to plaintiff in an effort to build a case to terminate her for reporting harassment by Jobe.

### 3.    Refusal to Excuse Plaintiff's September 25-26 Absences

Defendant relies on its attendance policy as the lawful basis for designating plaintiff's health-related absences as unexcused.  Defendant's policy provides that employees' health-related absences will be treated as unexcused absences unless the employees "[p]rovide confirmation . . . that they were examined by their health care provider during their absence." Rak Decl., Ex. 7 at 2.  Rak testified at her deposition that for an absence to be excused the employee must be examined by a doctor on the day of the absence.

Defendant's policy governing health-related absences could be interpreted less restrictively – for example, as allowing a sick employee who missed work over the weekend to comply with the policy by seeing a doctor on Monday if he or she was not scheduled to work until later in the week.  Because the court must draw all inferences in favor of the non-moving party, defendant's policy must be interpreted in this less restrictive manner.

Moreover, plaintiff has presented evidence that defendant has applied its policy less restrictively to others.  A former foreman testified that defendant did not generally require employees to be examined on the day of their absence, provided that they were examined before they returned to work.  Plaintiff also declared that her supervisor, Kevin Sturdy, excused her absences initially, but that Rak then directed that they be designated as unexcused.

Accordingly, the court finds that defendant has failed to establish a legitimate reason for marking plaintiff's health-related absences as unexcused despite her obtaining a medical release.

OPINION AND ORDER- 20

Even if the attendance policy provided a lawful basis for defendant's actions, plaintiff has presented adequate evidence of pretext, since a reasonable juror could conclude that defendant applied its medical absence policy to plaintiff more strictly because she complained of sexual harassment.

### 4.    Corrective Action for Late Arrival on November 20, 2004

Plaintiff was written up for arriving late on November 20, 2004.  This write-up, in conjunction with the unexcused absences discussed above, formed the basis for her subsequent termination.  Defendant's attendance policy provides a legitimate nondiscriminatory basis for disciplining an employee for arriving late to a shift.

However, plaintiff alleges that she was not scheduled to work on November 20, according to the schedule posted two days earlier.  Plaintiff asserts that she was unaware that she had been scheduled to work until she received a call at the beginning of the shift.  Other employees reported observing that plaintiff was not scheduled to work initially.  Construing the record favorably to plaintiff, a reasonable juror could conclude that defendant changed plaintiff's schedule without her knowledge to create the opportunity to issue this final corrective action against plaintiff.

### 5.    Termination

Defendant asserts that plaintiff was terminated based on her "excessive attendance violations" and submits a record of all corrective actions issued to employees as well as any terminations.  Plaintiff's termination appears reasonable in light of the number of corrective actions she had received compared to other employees.  However, plaintiff's evidence that the corrective actions underlying her termination were pretextual establishes a question of fact as to whether the termination itself was pretextual.

OPINION AND ORDER- 21

In sum, a reasonable juror could conclude that the policies or guidelines relied on by defendant as a lawful basis for each corrective action were pretexts for building a case against plaintiff in response to her complaints of harassment. Defendant's summary judgment motion is therefore denied as to plaintiff's retaliation claims.

## C.    WRONGFUL DISCHARGE (Claim 5)

Plaintiff claims that she was terminated for exercising her employment-related right to complain of harassment and resist discrimination and retaliation. Defendant argues that a common law wrongful discharge claim is not available for retaliation because adequate remedies exist under Title VII and O.R.S. 659A.030. For the following reasons, defendant's summary judgment motion is denied as it pertains to plaintiff's wrongful discharge claim.

A wrongful discharge claim has two elements: "there must be a discharge, and that discharge must be wrongful." *Moustachetti v. Oregon*, 877 P.2d 66, 69-70 (Or. 1994) (quotations and citations omitted). A wrongful discharge is a discharge for reasons that contravene public policy and is a limited exception to Oregon's at-will employment doctrine. *Id.*

Generally, Oregon courts have allowed wrongful discharge tort actions in two situations: (1) when an employee is fired for performing an important duty or societal obligation, or (2) when an employee is fired for exercising statutory rights that relate to the employment and that reflect an important public policy. *Babick v. Or. Arena Corp.*, 40 P.3d 1059, 1062 (Or. 2002) (citations omitted). The second situation applies if the plaintiff was pursuing a right that "relate[s] to the person's role as an employee and [is] identified in the statutes, constitution, or case law as one of important public interest." *Sieverson v. Allied Stores Corp.*, 776 P.2d 38, 40 (Or. App. 1989).

OPINION AND ORDER- 22

Plaintiff claims she was terminated in retaliation for reporting sexual harassment by her supervisor. Her claims falls within the second category of cases, the exercise of a job-related right of important public interest. *See Holien v. Sears, Roebuck and Co.*, 689 P.2d 1292, 1300 (Or. 1984) (holding that an employee's termination following his or her rightful resistance to a supervisor's sexual demands or harassment was actionable in tort as a wrongful discharge).

The court rejects defendant's argument that a wrongful discharge claim is unavailable because adequate remedies exist under Title VII or O.R.S. 659A.030.[1] *See Carlson v. Crater Lake Lumber Co.*, 796 P.2d 1216, 1219 (Or. App. 1990) ("If existing remedies adequately protect the employment related right, however, the Oregon Supreme Court has usually chosen not to recognize an additional common law remedy of wrongful discharge").

Defendant relies on one Ninth Circuit case and two cases from this district that declined to recognize a common law claim for wrongful discharge. *See Thomas v. City of Beaverton*, 379 F.3d 802, 813 (9th Cir. 2004) (affirming summary judgment on wrongful discharge claim when city employee alleged discharge in retaliation for her opposition to retaliation against coworker on grounds that she "did not suffer the kind of personal injury that would warrant providing a common law remedy of wrongful discharge in addition to the existing state and federal statutory remedies for retaliation"); *Perez-Ramirez v. Bimbo Bakeries USA, Inc.*, No. 05-CV-1699, 2006 WL 2902873, *3 (D. Or. Oct. 5, 2006) (declining to recognize common-law wrongful-discharge claim when employee alleged termination in retaliation for reporting race discrimination); *Speed v. Adidas*, No. 04-CV-1430, 2006 WL 897978, *13 (D. Or. Apr. 6, 2006) (same).

---

[1] Plaintiff has moved to strike this argument. Plaintiff's motion, and the court's reasons for denying it, are discussed below.

OPINION AND ORDER- 23

However, when deciding issues of state law, this court must interpret and apply Oregon law as the Oregon Supreme Court would apply it.  *See S .D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001).  Accordingly, the cases cited by defendant are unavailing in light of contrary authority from the Oregon Supreme Court, which defendant neither cites nor offers a basis for distinguishing.  In *Holien*, the court recognized a wrongful discharge claim for a retaliatory discharge for resistance to sexual harassment after concluding explicitly that existing state and federal remedies for sex discrimination did not provide an adequate remedy.  *Holien*, 689 P.2d at 1300.  The court reasoned that federal and state remedies of reinstatement, back pay, and injunctions "fail to appreciate the relevant dimensions of the problem" because they do not compensate the plaintiff for "such personal injuries as anguish, physical symptoms of stress, [and] a sense of degradation[.]"  *Id.*

Defendant also argues for summary judgment on grounds that plaintiff has failed to show a causal connection between her exercise of employment-related rights and her termination.  *See Shockey v. City of Portland*, 837 P.2d 505 (Or. 1992) (discussing evidence of causal connection as possible grounds for summary judgment on wrongful discharge claim).  Assuming that a causal connection must be shown, this argument is unavailing.  As discussed above, the proximity between plaintiff's report of harassment and the corrective actions leading up to her termination provide adequate evidence of a causal connection to survive summary judgment.

## MOTIONS TO STRIKE

### 1.   Defendant's Motion to Strike

Defendant moves to strike various statements from plaintiff's supporting affidavits and declarations on grounds that they are hearsay, are not based on personal knowledge, or are

OPINION AND ORDER- 24

unsupported allegations.   Plaintiff opposes this motion.  The court's consideration of material

that is the subject of defendant's motion was not outcome determinative.  Accordingly,

defendant's Motion to Strike [61] is denied as moot.

**2.      Plaintiff's Motion to Strike**

Plaintiff moves to strike from defendant's Reply [57] all argument concerning plaintiff's

wrongful discharge claim, on grounds that defendant did not raise the argument in its summary

judgment motion.  Plaintiff also argues that defendant's wrongful discharge argument is

erroneous.  Defendant opposes this motion.

Defendant's summary judgment motion encompasses a challenge to plaintiff's wrongful

discharge claim.  Therefore, plaintiff had notice that she should present any arguments for

allowing the wrongful discharge claim in her Response.  To the extent that plaintiff claims

prejudice because defendant articulated another basis for granting summary judgment, that

argument is unavailing.  Plaintiff's complaint that she was denied an opportunity to respond to

defendant's argument is unpersuasive because she offered a rebuttal in her Memorandum

supporting her Motion to Strike.  Accordingly, plaintiff's Motion to Strike [66] is denied.

///

///

///

**<u>CONCLUSION</u>**

For the foregoing reasons, defendant's Motion for Summary Judgment [32] is GRANTED

IN PART AND DENIED IN PART as follows:  (1) defendant's motion is GRANTED as it

pertains to plaintiff's federal and state discrimination claims (Claims 1 and 3); (2) defendant's

motion is DENIED as it pertains to plaintiff's federal and state retaliation claims (Claims 2 and

OPINION AND ORDER- 25

4) and (3) defendant's motion as DENIED as it pertains to plaintiff's wrongful discharge claim

(Claim 5).  Defendant's Motion to Strike [61] is DENIED as moot.  Plaintiff's Motion to Strike

[66] is DENIED.

IT IS SO ORDERED.

DATED this ___6___ day of March, 2007.


_____/s/ ANCER L. HAGGERTY___
ANCER L. HAGGERTY
United States District Judge


OPINION AND ORDER- 26